IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**SAMMY STEWART**                                                                                 **PLAINTIFF**
**ADC #103511**

V.                      **NO. 2:24-cv-00111-BSM-ERE**

**MELBOURNE HOGAN and**
**MARTIN PADILLA**                                                   **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.    Discussion:**

*Pro se* plaintiff Sammy Stewart, an Arkansas Division of Correction ("ADC") inmate, filed this lawsuit under 42 U.S.C. § 1983. *Doc. 2*. Mr. Stewart is currently proceeding on his claim that, on February 12, 2024, Defendants Melbourne Hogan and Martin Padilla used excessive force against him by excessively tightening his

handcuffs causing him to suffer nerve damage.[1]

Defendants have now filed a motion for summary judgment, brief in support, and statement of facts, arguing that Mr. Stewart failed to exhaust his administrative remedies before filing this lawsuit. *Docs.19, 20, 21*. Mr. Stewart has not responded to Defendants' motion, and the time for doing so has passed.[2] *Doc. 22*. The motion is now ripe for review.

For the reasons stated below, Defendants' motion for summary judgment (*Doc. 19*) should be GRANTED.

### III. Discussion:

    **A.**    **The PLRA Makes Exhaustion Mandatory**

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means

---

[1] The Court previously dismissed Mr. Stewart's official capacity claims, his false disciplinary claims, and his claims against Defendants Palmer and Culclage. *Doc. 9*.

[2] On October 7, 2024, Mr. Stewart filed a motion for discovery asking the Court to order defense counsel to provide him certain evidence related to the merits of the case. *Doc. 23*. The same day, I denied Mr. Stewart's motion and reminded him that he had until October 21, 2024, to respond to Defendants' motion for summary judgment. *Doc. 24*.

2

using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). To resolve the exhaustion question, the Court must determine: (1) what administrative remedies the ADC made available to inmates to bring and resolve claims; and (2) whether Mr. Stewart fully and properly complied with the administrative remedies that were available to him.

**B.   The ADC Grievance Procedure**

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34. *Doc. 19-4*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising the claim with the Warden, Health Services Administrator, or Mental Health Supervisor within three business days of the denial

3

of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-14*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejects the appeal. *Id. at 14*.

To complete the exhaustion process before bringing this lawsuit, Mr. Stewart was required to present his excessive force claims against Defendants in a timely filed grievance and pursue all three steps of the ADC's grievance process until he received a decision on the merits at the final stage. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (a prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits.").

C. **Mr. Stewart's Grievance History**

Defendants submit the declaration of ADC Inmate Grievance Supervisor Terri Grigsby-Brown. *Doc. 19-1*. Ms. Grigsby-Brown states that she reviewed Mr. Stewart's grievance history and found one medical grievance related to the claims in this lawsuit, grievance EAM-24-449. *Id. at 5*.

On February 28, 2024, Mr. Stewart submitted grievance EAM-24-449 stating:

4

> Wardon Jackson Ass. Wardon Davis Ass. Wardon Richardson, Director Payne on 2-12-24 I fallout in the restroom in 19 Bks 19 Bks I was laying face down on the floor with blood coming from my forehead when I try to get the blood out of my eyes ADC Officer handcuff me put me on stretcher take me to infirmary an ambulance take me to Arkansas trauma system doctor told them to take them handcuff off me cutting into my bone that left large handcuff rings around my wrist when Doctor told my lay back I felt big knot on back of my head Doctor William told me I had blood in my urine I take a drug test it was good since I been back at the unit been putting sick call in about my left hand staying numb all time this is a violation due process of fourteenth Amendment Allso being *deliberate indifference to my health an safe*.

Doc. 19-3 at 3 (emphasis added).

On the same day, Mr. Stewart's grievance was forwarded to the ADC medical department. *Id*. The problem solver responded, "you were seen in sick call for the above complaint on 2/15/24, 2/18/24, 2/28/24 & referred to a provider[.] You are on the pending list to be seen . . .." *Id*.

In response, Mr. Stewart stated in Step Two of the grievance procedure that "[t]his was not a medical issue this was about what happen on 2-12-23." *Id*.

Mr. Stewart then appealed that decision to the Health Services Administrator. *Doc. 19-3 at 2*.

In his decision, the Health Services Administrator responded that: (1) on February 15 and 18, medical personnel saw Mr. Stewart in sick call; (2) on February 28, medical personnel referred Mr. Stewart to a provider; and (3) on March 1, APN Bennett examined Mr. Stewart and concluded that his "left hand was symmetrical with right, no edema, erythema." *Id.* As a result, the Health Services Administrator

5

determined that medical professionals were addressing Mr. Stewart's medical needs and his grievance was without merit. *Id*.

In the appeal section of that decision, Mr. Stewart wrote: "[t]he grievance is about the unprofessional behavior in the form of excessive force used in placing handcuffs on my writs so tightly that it caused bruising, cut off circulation, scarring, and numbness. The issue was improperly addressed as I was treated unprofessionally by staff." *Id*.

In the Deputy Director's decision, Aundrea Culclager explained that, "[t]he medical department appropriately addressed your complaint and there is no document to support your allegations that your hand numbness was done by cuffs being too tight during your February 12, 2024 encounter; therefore, this appeal is without merit." *Id. at 1*.

It is undisputed that Mr. Stewart does not reference or identify by name either Defendant Hogan or Padilla in grievance EAM-24-449 or in his appeal of that grievance.[3] His allegations at Step One arguably were insufficient to put ADC officials on notice that he was making a claim of excessive force against unidentified officers, and the ADC's response gave him clear notice that his grievance was

---

[3] Although, in his appeal, Mr. Stewart complained that unidentified ADC officers used excessive force against him on the date in question, the ADC inmate grievance policy provides that inmates may "not list additional issues, requests, or names which were not a part of the original grievance, as those will not be addressed." *Doc. 19-4 at 12*.

construed as based solely on inadequate medical care. In addition, this is not the case where ADC officials investigated a procedurally flawed grievance (for example, one that did not identify or name all personnel involved but was investigated).[4] See *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (holding that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits"). Although ADC medical personnel determined that Mr. Stewart's wrist injury was not caused by his handcuffs being too tight on the day in question, based on Mr. Spencer's grievance papers, ADC officials did not investigate Mr. Stewart's claim that either Defendant used excessive force against him. See *Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (holding that ADC prisoner failed to exhaust his administrative remedies as to two officers where he failed to name them in his grievance or include any information about their alleged misconduct).

Here, Mr. Stewart attempted to raise his excessive force claim as part of this grievance by stating that he was not bringing a medical claim at step two of the grievance procedure, and by including this claim in his appeal of the health services

---

[4] The ADC inmate grievance policy provides that inmates "should write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses." *Doc. 19-4 at 6*. However, the failure to identify a defendant by name in a grievance is not necessarily fatal to exhaustion as long as an inmate provides enough information for the ADC to identify the intended defendant and investigate the merits of the grievance. See *Axelson v. Watson*, No. 5:15-cv-241 BSM, 2016 WL 6673956, *2 (E.D. Ark. Nov. 4, 2016).

7

response to his unit level grievance. However, in his original grievance, Mr. Stewart specifically stated that medical staff had acted with deliberate indifference to his "health and safe[ty]" by failing to treat his wrist injury. Accordingly, ADC staff, reasonably construing Mr. Stewart's Step One allegations, only addressed the merits of a potential medical deliberate indifference claim.

As a result, even though Mr. Stewart fully exhausted the medical claim raised in grievance EAM-24-449, by doing so he did not receive a merits decision regarding his pending excessive force claims.[5]

In addition, Mr. Stewart has failed to come forward with any evidence that either: (1) the ADC inmate grievance process was unavailable to him; or (2) he fully exhausted his administrative remedies with regard to his pending excessive force claims. As a result, on this record, there is no genuine issue of material fact on the threshold question of whether Mr. Stewart fully exhausted his pending claims by asserting them in the ADC's grievance process and fully exhausting all available

---

[5] While ADC medical staff may have determined that Mr. Stewart's wrist injury was not caused by tightened handcuffs, this conclusion does not resolve Mr. Stewart's excessive force claim against either Defendant. The lack of a significant injury is not fatal to an inmate's excessive force claim. See *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (abrogating the de minimis injury rule in excessive force cases, and clarifying that the extent of the injury is only one factor to be considered when resolving the "core judicial injury" of "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (holding that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim).

remedies before bringing this lawsuit. As a result, Defendants are entitled to judgment as a matter of law.

IV. **Conclusion:**

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 19*) be GRANTED.

2. Mr. Stewart's claims against Defendants Hogan and Padilla be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

3. The Clerk be instructed to close this case.

DATED 5 November 2024.

_____
UNITED STATES MAGISTRATE JUDGE