IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**SAMMY STEWART**                                                                           **PLAINTIFF**
**ADC #103511**

V.                     NO. 2:24-cv-00111-BSM-ERE

**MELBOURNE HOGAN and**
**MARTIN PADILLA**                                                  **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.    Procedure for Filing Objections

This Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, you may waive the right to appeal questions of fact.

### II.    Discussion

*Pro se* plaintiff Sammy Stewart, an Arkansas Division of Correction ("ADC") inmate, brings excessive force claims against Defendants Melbourne Hogan and Martin Padilla and requests money damages. *Doc. 2*. Mr. Stewart alleges that while restrained during an incident on February 12, 2024: (1) Defendant Hogan kneed him

in the back of his head and excessively tightened his handcuffs causing nerve damage; and (2) Defendant Martin Padilla placed his knee in the back of his kidney.[1]

Defendants have now filed a motion for summary judgment, statement of facts, and brief in support, arguing that Mr. Stewart's claims against them fail as a matter of law. *Docs. 50-52*. Mr. Stewart has responded to Defendants' motion and Defendants have replied to Mr. Stewart's response. *Docs. 55- 57, 64, 67*. Defendants' motion is now ripe for review.

For the reasons stated below, Defendants' motion for summary judgment (*Doc. 50*) should be GRANTED.

**III. Discussion**

    **A.    Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must

---

[1] The Court previously dismissed Mr. Stewart's official capacity claims, his false disciplinary claims, and his claims against Defendants Palmer and Culclage. *Doc. 9*.

come forward with specific facts demonstrating that there is a material dispute for trial. *See* FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if – but only if – the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B.     Facts without Material Dispute[2]**

On February 12, 2024, at approximately 3:23 p.m.,[3] the video recording of the underlying incident[4] shows Mr. Stewart in the dayroom of the East Arkansas

---

[2] Unless otherwise specified, these facts are taken from: (1) the video footage of the incident (*Doc. 50-1*); (2) Defendant Padilla's declaration (*Doc. 50-2*); (3) Defendant Hogan's declaration (*Doc. 50-3*); and (4) Mr. Stewart's medical records (*Doc. 50-5*).

[3] The video timestamp shows a time of "4:23" or "16:23," however, all other reports in Defendants' exhibits indicate that the video's clock is off by one hour. *Doc. 5-7 at 1-2; Doc. 50-8 at 1-2*. This difference is immaterial to the merits of this case, but I will adjust timestamp references to be one hour earlier than the actual video timestamp.

[4] In his supplemental response to Defendant's motion, Mr. Stewart denies that the video shows what occurred on the date in question. Instead, Mr. Stewart argues, the incident occurred in the bathroom, where it should have been recorded. *Doc. 64*. In reply, Defendants deny the existence of any other video, reaffirm the occurrence of the incident in the dayroom, and argue the video "captures exactly what happened" that day. *Doc. 67*. Defendants also point out that the contemporaneous officer reports and medical records are consistent with the video evidence but inconsistent with Mr. Stewart's latest allegations. While Mr. Stewart denies being under the influence of drugs, the fact that three shots of Narcan were administered before his consciousness was restored, *Doc. 50-5*, strongly suggests that Mr. Stewart was in fact under the influence of illicit substances. This may impact his ability to recall accurately whether the incident occurred in the dayroom or the bathroom. Finally, the incident as described by both parties is consistent with what the video depicts, further supporting Defendants' position.

Region Unit's 19 Barracks. Mr. Stewart can be seen dancing, waving a towel around, and holding a towel on top of his head. After dancing around the dayroom for approximately one minute, Mr. Stewart collapses onto the floor. While seated on the ground, Mr. Stewart can be seen rapidly kicking his legs and rubbing the top of his head. Mr. Stewart then begins wiping the floor with one of the towels.

At approximately 3:24:45 p.m., in response to a "Code Red" emergency call, Defendant Hogan arrived in the dayroom and observed Mr. Stewart lying on the floor with blood covering his face. *Doc. 50-3 at 1*. Defendant Hogan and other unidentified ADC officers approached Mr. Stewart to conduct a physical assessment of him. *Id*. Due to Mr. Stewart's slurred speech, Defendant Hogan suspected that Mr. Stewart was under the influence of illicit drugs. *Id*.

---

For all these reasons, no reasonable jury could believe Mr. Stewart's recent assertion that the video is unrelated to the incident giving rise to his excessive force claims. See *Scott v. Harris*, 550 U.S. 372, 380 (2007) (when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (affirming summary judgment where "no reasonable jury could have credited [the plaintiff's] version of events"); *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) (explaining that a court is not required to "accept unreasonable inferences or sheer speculation as fact").

But even if the video were disregarded, the outcome would be the same. Once the struggle starts, the video does not show an unobstructed view of Mr. Stewart. For that reason, the Court relies primarily on the parties' sworn declarations of what happened rather than the video itself, which does not conclusively support either party's version of events.

ADC officers then gave Mr. Stewart several direct orders to submit to restraints, but Mr. Stewart refused to comply. *Id. at 2*. Defendant Hogan attempted to place Mr. Stewart's hands in restraints, but Mr. Stewart became combative and would not submit. *Id*. After Mr. Stewart continued to struggle and resist, Defendant Hogan testified that Mr. Stewart began growling and yelling, then attempted to bite the ADC officers. *Id*. Eventually, within several minutes, Defendant Hogan was able to restrain Mr. Stewart in handcuffs. *Id*.

When medical staff members arrived in 19 barracks at approximately 3:26 p.m., Mr. Stewart was unconscious on the floor. *Doc. 50-5 at 4*. Four minutes later, at 3:30 p.m., medical staff administered Narcan. *Id*. At approximately, 3:35 p.m. and 3:40 p.m., medical staff administered two additional doses of Narcan. *Id*.

At approximately 3:42 p.m., medical staff administered oxygen and attempted an IV, but they were unsuccessful. *Id*. At approximately, 3:45 p.m., Mr. Stewart opened his eyes and started to mumble. *Id*.

At approximately, 4:20 p.m. medical staff contacted EMS. *Id*. At that time, Mr. Stewart stated, "that was my first time trying that," but did not tell medical staff what he had taken. *Id*. Medical staff noted a "3 cm knot to [Mr. Stewart's] forehead with 1/2cm gash." *Id*. EMS arrived at approximately 4:42 and transported Mr. Stewart to the hospital. *Id*.

On February 13, when ADC officials asked Mr. Stewart about the incident, he stated, "the only thing that's hurting me is this on the back of my head." *Doc. 50-5 at 2*.

On February 15, medical staff assessed Mr. Stewart due to his complaints of a head injury and numbness in his left hand. *Id. at 1*. Medical staff noted "no bruising, swelling, or visible deformities only small scratches around wrist noted on patient," and no decreased range of motion. *Id*. Based on the medical records submitted by Defendants, following the February 15 medical assessment, Mr. Stewart did not make any additional complaints related to the injuries sustained during the underlying incident.

C. **Mr. Stewart's Version of Events[5]**

According to Mr. Stewart, on the date in question, he went to the restroom in 19 barracks. *Doc. 50-4 at 10*. After he washed his hands, he got lightheaded, fell face forward, and ended up on the floor with blood "coming off [his] face."[6] *Id. at 10, 16*. At that time, Defendant Hogan arrived and repeatedly instructed Mr. Stewart to be still. *Id*. Mr. Stewart then told Defendant Hogan, "sir, there is blood running in my eyes." *Id*. Although Mr. Stewart concedes that he was resisting Defendant

---

[5] Mr. Stewart's version of events is taken from his deposition testimony. *Doc. 50-4*.

[6] Mr. Stewart contends that he was lightheaded because he had recently had a stomach virus. *Doc. 50-4 at 10*.

Hogan's order to submit to restraints, he explains that he was not being combative and denies trying to bite anyone. *Id. at 31*. According to Mr. Stewart, he was just trying to get the blood out of his eyes. *Id. at 30-31*. While Defendant Hogan was attempting to restrain Mr. Stewart, Defendant Hogan allegedly kneed Mr. Stewart in the back of the head and Defendant Padilla allegedly placed his knee in Mr. Stewart's kidney area. *Id. at 25*.

Once Defendant Hogan was able to place Mr. Stewart in handcuffs, Mr. Stewart began complaining that the handcuffs were cutting into him. *Id. at 35*. However, Defendant Hogan "kept putting the cuffs on me tight." *Id*. Defendant Hogan allegedly asked his supervisor, non-party Major Allison, whether he could loosen Mr. Stewart's hand cuffs, and Major Allison told him that he could not. *Id. at 10*.

According to Mr. Stewart, the next thing that he remembers is waking up in the infirmary. *Id. at 10-11*. After Mr. Stewart provided his name and ADC number, he lost consciousness again and only remembers waking up in the ambulance. *Id. at 11*. When he woke up, his hand was beginning to swell, and he asked an unidentified ADC officer to loosen his handcuffs. *Id*. After the officer repeatedly denied Mr. Stewart's requests, an "ambulance guy" said, "officer, will you please unhand cuff, and will you please loosen that damn inmate handcuffs up so he will shut the hell

7

up." *Id*. At that time, the transporting officer loosened Mr. Stewart's handcuffs and EMS staff took him to the hospital for further evaluation and treatment. *Id*.

Mr. Stewart explains that he suffered pain in his head, a marking on his wrist, and blood in his urine as a result of the incident. *Id. at 41-43*. He also complains that he continues to feel numbness in his left hand, wrist, and elbow. *Id. at 47*.

D.     **Qualified Immunity – Excessive Force Claims**

Both Defendants assert qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). "District courts may address these two questions in any order but may not deny qualified immunity without answering both questions in the plaintiff's favor." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation omitted).

Finally, in deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group," but must consider each Defendant's conduct to determine whether evidence against that "individual officer [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

To prevail on his Eighth Amendment excessive force claim, Mr. Stewart must demonstrate that Defendants used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). To act "maliciously" means "taking a course of action, without just cause or reason, that was intended to injure the inmate." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer who acts "sadistically" engages in "extreme or excessive cruelty" or "delight[s] in cruelty." *Id*. "The word 'sadistically' is not surplusage; 'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citation omitted).

In evaluating whether the force employed by Defendants was a good-faith effort to restore order, factors to consider include: (1) the objective need for the force; (2) the relationship between the need and the amount of force used; (3) the

9

threat reasonably perceived by Defendants; (4) any efforts made by Defendants to temper the severity of his response; and (5) the extent of Mr. Stewart's injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Stewart v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

### 1.  Defendant Hogan

Mr. Stewart's excessive force claims against Defendant Hogan are based on Defendant Hogan allegedly kneeing Mr. Stewart in the back of his head and tightening his handcuffs excessively. I will address each of these allegations separately.

#### a.  Kneeing Mr. Stewart in the Back of his Head

Defendant Hogan does not dispute that he kneed Mr. Stewart in the back of his head. Rather, in his sworn affidavit, Defendant Hogan states that he used "the necessary amount of force" to restrain a non-compliant inmate.[7] *Doc. 50-3 at 1*. For the following reasons, I agree that the evidence will not support a jury finding in Mr. Stewart's favor.

First, Mr. Stewart fails to present any evidence suggesting that Defendant Hogan acted maliciously and sadistically to cause harm. See *Jackson v. Gutzmer*, 866 F.3d 969 (8th Cir. 2017); *Peterson v. Heinen*, 89 F.4th 628, 636 (8th Cir. 2023)

---

[7] The video recording of the underlying incident does not conclusively support either party's version of events because the many officers involved in the incident obstruct the view of Mr. Stewart while he is on the floor.

(granting qualified immunity when officers held down a resisting prisoner for a short time so that they could restrain him); *Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (granting qualified immunity when there was no "specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious).

Stated another way, this incident did not involve "a complete absence of a penological purpose," which could raise "the reasonable inference that [Defendant Hogan] acted maliciously in an effort to cause harm." *Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010); see also *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (noting that "guards are liable only if they are completely unjustified in using force" (emphasis added)). The United States Supreme Court has explained, "[t]he infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cleaned up).

Even if Defendant Hogan arguably used more force than necessary when he kneed Mr. Stewart in the back of the head, such conduct "falls far short of a showing that there was no plausible basis for [his] belief that this degree of force was

11

necessary." *Whitley*, 475 U.S. at 323. It is undisputed that Defendant Hogan was attempting to control an inmate who: (1) he believed was under the influence of illicit drugs; (2) refused to comply with direct orders; (3) had become combative; and (4) refused to be restrained. As a result, some degree of force was necessary and justified.

Second, although Mr. Stewart sustained a bump on his head during the altercation, such a minimal injury, although not definitive, suggests a de minimis amount of force was used and further undercuts Mr. Stewart's position that the amount of force used was excessive. See *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (an "inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim"); *Jackson v. Buckman*, 756 F.3d 1060, 1069 (8th Cir. 2014) (a "karate hit" that caused on bleeding or bruising to a pretrial detainee's nose was a de minimis use of force); *Lawson v. Vance*, No. 02-2057, 2002 WL 1726921 (8th Cir. Jul. 26, 2002) (a slap to a prisoner's face was a de minimis use of force).

The undisputed evidence before the Court indicates that Defendant Hogan's use of force occurred in the context of efforts to control and restrain a non-compliant and combative inmate. The situation required some use of force to regain control of Mr. Stewart. See *Peterson*, 89 F.4th at 636 (granting qualified immunity when officers held down a resisting prisoner for a short time so they could restrain him).

No reasonable factfinder could conclude that Defendant Hogan used "an excessive [or] disproportionate use of force" when he used his knee to restrain Mr. Stewart, who was admittedly resisting officers to some degree as they tried to place him in handcuffs.

Defendant Hogan is entitled to qualified immunity on this claim.

### b.     Excessively Tightening Mr. Stewart's Handcuffs

Mr. Stewart also alleges that Defendant Hogan placed the handcuffs around his wrists too tightly causing him to suffer nerve damage. However, the Eighth Circuit has recognized that "[h]andcuffing inevitably involves some use of force." *Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006). Additionally, handcuffing "almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs [were] applied." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002)).

Mr. Stewart fails to present any evidence suggesting that Defendant Hogan acted maliciously and sadistically to cause harm when he used handcuffs to restrain him. Mr. Stewart acknowledged in his deposition that Defendant Hogan asked Major Allison whether he could loosen Mr. Stewart's handcuffs, but Major Allison denied the request. *Doc. 50-4 at 10*. Defendant Hogan's conduct as described by Mr.

Stewart falls short of creating a jury question on the critical issue of whether Defendant Hogan acted maliciously or sadistically to cause harm.

Finally, although Mr. Stewart alleges that he suffered nerve damage as a result of the excessively tight restraints, he has failed to present any evidence that he suffered any permanent injury as a result of Defendant Hogan's conduct. See *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("We do not believe . . . allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force."). It is also undisputed that Mr. Stewart's handcuffs were loosened while he was being transported to the hospital and that he only remained in the excessively tightened restraints for roughly an hour and half.

Finally, when medical staff examined Mr. Stewart on February 13, he did not complain of any injury to his wrist, and, on February 15, when Mr. Stewart complained of wrist pain, medical staff only noted small scratches on his wrist with no limited range of motion.

On this record, no reasonable factfinder could conclude that Defendant Hogan's limited use of force in restraining Mr. Stewart in handcuffs on the date in question violated Mr. Stewart's constitutional rights. As a result, Defendant Hogan is also entitled to qualified immunity.

## 2. Defendant Padilla

Mr. Stewart alleges that Defendant Padilla placed his knee into his kidneys while officers were attempting to restrain him, causing kidney damage and blood in his urine. However, in Defendant Padilla's declaration, he testified that he "was not involved in restraining Inmate Stewart, applying handcuffs, or transporting him to the hospital. As the Captain on duty, [he] prepared the incident report to submit to Major Allison." *Doc. 50-2 at 2*. In addition, in the incident report submitted by Defendant Padilla, he does not make any reference to his personal involvement in the underlying incident. Rather, he explains that the "field officers" were involved in restraining Mr. Stewart. *Doc. 50-7 at 1*.

Even assuming Mr. Stewart's version of events to be true, Defendant Padilla, by placing his knee in Mr. Stewart's kidneys, arguably used a minimal amount of force in a situation where some use of force was necessary to regain control of Mr. Stewart as he resisted being handcuffed and disobeyed direct orders.

Finally, Mr. Stewart offers only unsubstantiated allegations about the injury allegedly caused by Defendant Padilla's conduct, further undercutting the seriousness of the incident and claimed severity of force used by Defendant Padilla. Although Mr. Stewart alleges that, following the incident, he had blood in his urine, he presents no evidence to support this statement. And Mr. Stewart's medical records

do not indicate that Mr. Stewart ever complained of blood in his urine after the incident.

The evidence presented, even when viewed in a light most favorable to Mr. Stewart, is insufficient to permit a reasonable jury to find that Mr. Defendant Padilla used force maliciously and sadistically to cause harm to Mr. Stewart.

Defendant Padilla is entitled to qualified immunity on Mr. Stewart's excessive force claim.

## IV.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 50*) be GRANTED.

2. Judgment should be entered in favor of Defendants Hogan and Padilla.

3. Mr. Stewart's claims against Defendants Hogan and Padilla be DISMISSED, with prejudice.

4. The Clerk be instructed to close this case.

DATED 20 November 2025.

_____
UNITED STATES MAGISTRATE JUDGE